UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **EMISSIVE ENERGY CORPORATION,** | : | Civil No. CA 04 482L |
| Plaintiff, | : | |
| v. | : | |
| **COAST CUTLERY CO.,** | : | |
| Defendant. | : | |

**DEFENDANT COAST CUTLERY'S COMBINED RESPONSE TO PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY**

Defendant Coast Cutlery Co. responds to Plaintiff's Motion to Compel Responses to Interrogatories ("Pl.'s Mot. to Compel Resps. To Interrogs.") and Plaintiff's Motion to Compel Production of Documents ("Pl.'s Mot. to Compel Produc. Docs.") as follows:

**INTRODUCTION**

This lawsuit arises out of plaintiff's mistaken belief that Coast Cutlery, a family-owned business located in Portland, Oregon, intentionally breached a settlement agreement between the parties concerning an LED flashlight formerly sold by Coast Cutlery. By way of background, LED flashlights are flashlights using light emitting diodes to produce light at the molecular level, unlike ordinary flashlights which generate light through

the use of filaments housed in light bulbs. Coast Cutlery has been selling LED flashlights since about 1998.

**The First Lawsuit and the Settlement Agreement.**

In late 2002, plaintiff Emissive Energy Corporation sued Coast Cutlery for false advertising, patent infringement and unfair competition in connection with Coast Cutlery's sale of an LED mini flashlight called the V2 Triplex. Emissive Energy alleged that the V2 Triplex was a knock off of its X5 mini flashlight product, when in reality the V2 Triplex had been designed independently by a Germany company called Zweibrüder Stahlwarenkontor. The case, Emissive Energy Corp. v. Zweibrüder et al., No. 02-497-L, was assigned to this Honorable Court.

In March 2003, Coast Cutlery stipulated to an Order enjoining it from using certain complained of phrases in connection with the V2 Triplex. In doing so, Coast Cutlery did not concede any wrongdoing. Instead, Coast Cutlery simply made a business decision to change its packaging and advertising rather than engage in further litigation on the topic. Coast Cutlery then changed its packaging and advertising materials to reflect its agreement.

In July 2003, Coast Cutlery entered into a Settlement Agreement whereby it agreed to phase out its sale of the old V2 Triplex. In doing so, Coast Cutlery did not concede any

wrongdoing. Instead, Coast Cutlery simply made a business decision that it was easier for Zweibrüder Stahlwarenkontor to redesign the V2 Triplex than to engage in further litigation on the topic. Coast Cutlery then phased out the old V2 Triplex and started selling a modified product - referred to herein as the Replacement Product and sold under the same model numbers - in its stead. Emissive Energy does not challenge the Replacement Product in any respect.

The parties' settlement agreement, a copy of which is attached for the Court's convenience, did not call for the removal of the original V2 Triplex from the marketplace. It did, however, release all claims at issue in the first lawsuit, albeit limited to the United States. Settlement Agreement and Limited Release ¶ 7. The settlement agreement also called for dismissal of the lawsuit with prejudice, id. ¶ 1 and C-1, which the Court did on July 16, 2003.

**The Current Lawsuit.**

In October 2004, Emissive Energy accused Coast Cutlery of continuing to sell the original V2 Triplex, which was not true. Emissive Energy apparently had found one of the original flashlights in a Rhode Island Target store, leading it to believe that Coast Cutlery was still selling the original product. The parties unfortunately were unable to resolve the dispute, and the

instant lawsuit was filed in November 2004 alleging the same claims brought in the original lawsuit plus breach of the settlement agreement and trademark infringement.

Contrary to Emissive Energy's characterization of the current dispute, this is a garden variety breach of contract case arising out of an alleged breach of a settlement agreement. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F.Supp.2d 317, 324 (D.R.I. 1999) ("Settlement agreements are treated as contracts and enforced under the rules governing contracts generally."). Coast Cutlery has made and continues to make a good faith effort to comply with the terms of the settlement agreement. If it has fallen short of that goal, any shortcoming was de minimis at most and would not transform this case into something more than a contract enforcement action. Settlement agreements are binding contracts that should be given effect, particularly given that "Rhode Island courts favor the settlement of disputes outside of the litigation process." Id. Emissive Energy's Motions to Compel should be evaluated in light of the above background.[1]

: : :

[1] Emissive Energy appears to take the outrageous position that it seeks to demonstrate a breach of the settlement agreement so as to "pursue all remedies against Coast, including damages for all Coast's infringement, not just the post-Settlement Agreement infringement." See Plaintiff's Motion to Compel Production of Documents at 5 (emphasis in original).

**RESPONSE TO MOTION TO COMPEL RESPONSES TO INTERROGATORIES**

Interrogatory No. 8

Interrogatory No. 8 asks Coast Cutlery to describe its communications with third parties "regarding the Accused Flashlight, the Replacement Flashlight and/or the Accused Packaging." In response, Coast Cutlery agreed to provide Emissive Energy with "copies of letters sent to customers regarding the phase out of the Accused Flashlight and Packaging," which it subsequently did.

Emissive Energy does not dispute that Rule 33 of the Federal Rules of Civil Procedure allows a litigant to refer to business records in response to a discovery request. Indeed, Emissive Energy responded to four of Coast Cutlery's interrogatories by citing to Rule 33 and referring Coast Cutlery to a handful of documents.

In recent conversations with Emissive Energy counsel, Coast Cutlery counsel was informed that Emissive Energy was surprised with the small number of customer letters produced and simply sought to ensure that Coast Cutlery had responded to this request in full. With the exception of two customer letters sent after Coast Cutlery's earlier response, which will be produced, Coast Cutlery has produced all responsive documents. The previously produced generic customer letter dated February 14,

 F:\JAW\5890.wpd

2005 was included in all product shipments - regardless of whether a shipment included the Replacement Product - and thus has been sent to a large number of customers. In addition, Coast Cutlery revised its catalogs to reflect the Replacement Product's photograph and ad copy prior to the parties finalizing the July 2003 settlement agreement and sent revised catalogs to customers in 2003, 2004 and 2005. Coast Cutlery has produced copies of its catalogs containing the Replacement Flashlight. To the best of its knowledge, Coast Cutlery had no non-written communications on this topic.

<u>Interrogatory No. 9</u>

Interrogatory No. 9 asks Coast Cutlery to "[i]dentify by model number each mini-flashlight and components thereof manufactured, imported, distributed and/or sold by Coast since January 2001, and for each such article specify the period of time during which it was manufactured, imported, distributed, and or sold by Coast." Given that the dispute between the parties has never concerned anything more than the V2 Triplex, and that Emissive Energy released all prior claims when it entered into the parties' July 2003 settlement agreement, Coast Cutlery objected to this request in its entirety. Coast Cutlery did, however, produce business records pertaining to the three versions of the V2 Triplex subject to the parties' settlement agreement - model numbers TT7546CP (V2 Triplex, Coast Brand, blue

beam), TT7547CP (V2 Triplex, Coast Brand, white beam) and EB7547CP (V2 Triplex, Eddie Bauer Brand, white beam) - dating back to the time of the first importation in 2002 through May 2005.

In recent conversations with Emissive Energy counsel, Coast Cutlery counsel was informed that Emissive Energy only seeks the model numbers and associated information for the flashlights that were the subject of the parties' settlement agreement. Coast Cutlery thus has complied fully with this interrogatory.

Interrogatory No. 11

Interrogatory No. 11 dovetails with Emissive Energy's Request for Production No. 10 in seeking information that shows, on a monthly basis, information necessary to determine Coast Cutlery's net profits on sales of the Accused Flashlight. Coast Cutlery objected to this interrogatory on several grounds, including because it sought information pertaining to claims that were settled and released pursuant to the parties' July 2003 settlement agreement. Again, pursuant to the parties' agreement, Coast Cutlery stopped importing the Accused Flashlight prior to October 15, 2003 and stopped selling it before December 31, 2003, and Emissive Energy released all claims in connection therewith.

Subsequently, without waiving any objections, Coast Cutlery produced business records documenting its procurement of

the three versions of the V2 Triplex subject to the parties' settlement agreement from the time of the first importation in 2002 through May 2005, well after Coast Cutlery replaced the Accused Flashlight with the Replacement Product. Coast Cutlery also provided sales information for the V2 Triplex, both in number of units and dollars, during the same period. Coast Cutlery further informed Emissive Energy that the duty rate on LED hand held lights is 12.50%, which is a matter of public record, and that its freight costs, import fees and brokerage fees total approximately an additional 8%. Freight forwarder invoices from the relevant time period are being provided to document these costs. Coast Cutlery thus has answered subparts (a)-(d) to this interrogatory in their entirety and subpart (g) in part.

Coast Cutlery believes that the requested information regarding the Accused Flashlight is not discoverable in this case and that it has exceeded its obligations in responding to this interrogatory.

Interrogatory No. 17

Interrogatory No. 17 asks Coast Cutlery to identify the "distributors, retailers and resellers of the Accused Flashlight." Although Coast Cutlery objected to this request, the reality is that Coast Cutlery's customer database does not enable it to identify the distributors, retailers and resellers

of the Accused Flashlight. Coast Cutlery simply cannot identify who bought what product during the 2002-03 time period, after which time it no longer sold the Accused Flashlight. Even if Coast Cutlery were able to provide this information, which it cannot, Coast Cutlery has no control over, and would necessarily lack information about, any distributors' sales of the Accused Flashlight to other retailers or resellers.

Interrogatory No. 18

Interrogatory No. 18 asks Coast Cutlery to "[i]dentify all distributors, retailers and resellers of the Replacement Flashlight." Coast Cutlery objected to this request and continues to do so because the Replacement Flashlight is not at issue in this case. Emissive Energy does not challenge Coast Cutlery's sale of the Replacement Flashlight, and Coast Cutlery believes this request reveals Emissive Energy's real motive in this case, i.e. gaining proprietary business data about a competitor's products and customers.

Although Coast Cutlery's database is capable of identifying current customers of the Replacement Flashlight, Coast Cutlery respectfully requests that the Court deny this request on the grounds that it is not likely to lead to the discovery of admissible evidence. Coast Cutlery is particularly concerned about Emissive Energy's attempt to obtain this data "to independently verify" Coast's information, because a customer

recently informed Coast Cutlery that an Emissive Energy sales representative told the customer not to buy Coast Cutlery's products as Emissive Energy was going to put Coast Cutlery out of business through litigation.

**RESPONSE TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Request No. 5

Plaintiff's Request No. 5 seeks all communications between Coast Cutlery and any third party "concerning the Accused Flashlight, the Replacement Flashlight and/or the Accused Packaging." In responding to this request, Coast Cutlery raised several objections, including that the request sought documents that were neither relevant nor calculated to lead to the discovery of admissible evidence. Coast Cutlery lodged this objection because the request sought documents pertaining to claims that had been settled and released pursuant to the parties' July 2003 settlement agreement, which permitted Coast to import the Accused Flashlight through October 15, 2003 and sell the Accused Flashlight from stock through December 31, 2003.

Without waiving its objections, Coast Cutlery agreed to produce "copies of letters sent to customers regarding the phase out of the Accused Flashlight and Packaging and introduction of the Replacement Flashlight," as those documents are relevant to Emissive Energy's breach of settlement agreement claim. In

recent conversations with Emissive Energy counsel, Coast Cutlery counsel was informed that Emissive Energy was surprised with the small number of customer letters produced and simply sought to ensure that Coast Cutlery had responded to this request in full.

With the exception of two customer letters sent after Coast Cutlery's earlier response, which will be produced, Coast Cutlery has produced all responsive documents. The previously produced generic customer letter dated February 14, 2005 was included in all product shipments - regardless of whether a shipment included the Replacement Product - and thus has been sent to a large number of customers. In addition, Coast Cutlery revised its catalogs to reflect the Replacement Product's photograph and ad copy prior to the parties finalizing the July 2003 settlement agreement and sent revised catalogs to customers in 2003, 2004 and 2005. Coast Cutlery has produced copies of its catalogs containing the Replacement Flashlight.

Request Nos. 7 and 12

Plaintiff's Request Nos. 7 and 12 are related in that they both seek the production of documents "concerning" Emissive Energy's X5 flashlight. Request No. 7 seeks all "communications between Coast and any third party concerning the X5." Request No. 12 seeks all "documents concerning the X5 including, without limitation, all analyses, evaluations or market research of the X5 by Coast."

In responding to Request No. 12, Coast Cutlery explained that it has "no documents concerning analyses, evaluations or market research of the X5." Otherwise, Coast Cutlery objected to these requests on attorney-client privilege and work product grounds because literally <u>every communication</u> between Coast Cutlery and its attorneys in the first lawsuit was a communication "concerning the X5." In recent conversations with Emissive Energy counsel, Coast Cutlery counsel was informed that Emissive Energy does not seek a privilege log of all such communications generated in the first lawsuit. Other than those communications, all of which occurred after Emissive Energy filed the first lawsuit, there are no responsive documents.

<u>Request No. 8</u>

Plaintiff's Request No. 8 seeks all documents regarding the "manufacture, procurement, distribution and/or sale of the Accused Flashlight including, without limitations, inventory reports, sales reports, correspondence, internal memoranda and agreements." Coast Cutlery objected to this request on several grounds, including on the grounds that it sought documents pertaining to claims that had been settled and released pursuant to the parties' settlement agreement.

Notwithstanding its objections, Coast Cutlery produced invoices documenting its procurement of all three versions of the V2 Triplex subject to the parties' settlement agreement – model

 F:\JAW\5890.wpd

numbers TT7546CP (V2 Triplex, Coast Brand, blue beam), TT7547CP (V2 Triplex, Coast Brand, white beam) and EB7547CP (V2 Triplex, Eddie Bauer Brand, white beam) - dating back to the time of the first importation in 2002 through May 2005. The invoice dated August 25, 2003 indicated the change to the Replacement Product, after which there were no more imports of the Accused Flashlight. Coast Cutlery also produced documentation of its inventory and sales reports for the Accused Flashlight, which showed that all of the Accused Flashlight units had been sold prior to the agreed upon deadline of December 31, 2003.

Despite this production, Emissive Energy seeks to compel production "concerning the procurement of the Accused Flashlights to determine whether it continued to order the product in violation of the Agreement." Pl.'s Mot. to Compel Produc. of Docs. at 5. Emissive Energy already has these documents. Emissive Energy also seeks to compel production "concerning sale and distribution of the Accused Flashlights" to determine whether Coast Cutlery complied with the December 31, 2003 deadline, but Emissive Energy already has these documents as well. In short, Coast Cutlery believes it has gone above and beyond its obligations in responding to Request No. 8.

Request No. 10

Request No. 10 seeks documents that show "on a monthly basis the costs incurred in connection with the manufacture,

procurement, offer for sale, or sale of the Accused Flashlight . . . ." As with Request No. 8, Coast Cutlery objected to this request on several grounds, including because it sought documents pertaining to claims that had been settled and released pursuant to the parties' July 2003 settlement agreement. Pursuant to the parties' agreement, Coast Cutlery did not import the Accused Flashlight after October 15, 2003 or sell the Accused Flashlight after December 31, 2003, and Emissive Energy released its claims in connection with the Accused Flashlight.

Without waiving its objections, Coast Cutlery produced invoices documenting its procurement of the three versions of the V2 Triplex subject to the parties' settlement agreement from the time of the first importation in 2002 through May 2005, well after Coast Cutlery replaced the Accused Flashlight with the Replacement Product. Coast Cutlery also provided sales information for the V2 Triplex, both in number of units and dollars, during the same period. Coast Cutlery further informed Emissive Energy that the duty rate on LED hand held lights is 12.50%, which is a matter of public record, and that its freight costs, import fees and brokerage fees total approximately an additional 8%. Freight forwarder invoices from the relevant time period are being provided to document these costs.

Coast Cutlery believes that the requested information regarding the Accused Flashlight is not discoverable in this case

and that it has exceeded its obligations in responding to this request.

Request No. 11

Request No. 11 seeks "documents concerning Coast's compliance with the terms of the Settlement Agreement." This request overlaps with and is redundant to other requests for production, including Request No. 5, to which Coast Cutlery has responded in full.

Similar to Request Nos. 7 and 12, discussed above, Coast Cutlery objected to this request on attorney-client privilege and work product grounds because nearly all communications between Coast Cutlery and its attorneys in the current lawsuit are communications "concerning Coast's compliance with the terms of the Settlement Agreement." Based on communications with Emissive Energy counsel, it is Coast Cutlery's understanding that Emissive Energy does not seek a privilege log of all such communications. Other than those communications, there are no responsive documents.

Request No. 13

Plaintiff's Request No. 13 seeks "documents concerning sourcing and/or importation of any part of the Replacement Flashlight." Coast Cutlery objected to this request on numerous grounds because the Replacement Flashlight simply is not at issue in this case. Emissive Energy does not challenge Coast Cutlery's

sale of the Replacement Flashlight, and Coast Cutlery believes this request reveals Emissive Energy's real motive in this case, i.e. gaining proprietary business data about a competitor's products.

Notwithstanding its objections, as discussed above in connection with Request No. 8, Coast Cutlery produced invoices documenting its procurement of all three versions of the V2 Triplex subject to the parties' settlement agreement dating back to the time of the first importation in 2002 through May 2005. The invoice dated August 25, 2003 indicated the change to the Replacement Product, after which only the Replacement Product was imported. Thus, Coast Cutlery has exceeded its obligations in responding to Request No. 13.

: : :

: : :

: : :

**CONCLUSION**

For the foregoing reasons, Coast Cutlery respectfully requests that the Court deny Emissive Energy's Motions to Compel in their entirety.

DATED this 21 day of July, 2005.

Respectfully submitted,

COAST CUTLERY CO.
By its attorneys

By: ______________________

Michael E. Haglund
(pro hac vice counsel)
Julie A. Weis
(pro hac vice counsel)
Haglund, Kelley, Horngren,
Jones & Wilder LLP
101 SW Main, Suite 1800
Portland, OR 97204
Telephone: (503) 225-0777
Facsimile: (503) 225-1257
E-mail: weis@hk-law.com

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, R.I. 02903
Telephone: 401-331-5700
Facsimile: 401-331-5787
E-mail: cbeal@cm-law.com