UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMISSIVE ENERGY CORPORATION, : CA 04 482L

Plaintiff,

v.

COAST CUTLERY CO.,

Defendant.

**DEFENDANT COAST CUTLERY'S OBJECTION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendant Coast Cutlery objects to plaintiff Emissive Energy Corporation's Motion to Compel Production of Documents. The grounds for this objection are set forth in Coast Cutlery's accompanying Memorandum, filed herewith.

Respectfully submitted,

COAST CUTLERY CO.
By its attorneys

By: Michael E. Haglund /CSB

Michael E. Haglund (pro hac vice)
Julie A. Weis (pro hac vice)
Haglund, Kelley, Horngren,
Jones & Wilder LLP
101 SW Main, Suite 1800
Portland, OR 97204
Telephone: (503) 225-0777
E-mail: weis@hk-law.com

G:\CSB\COASTCUTLERY\5883_WPD.DOC

By: ______________________

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, R.I. 02903
Telephone: 401-331-5700
E-mail: cbeal@cm-law.com

G:\CSB\COASTCUTLERY\5883_WPD.DOC

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEFENDANT COAST CUTLERY'S OBJECTION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** on the following party(ies):

Craig M. Scott
Christine Bush
Duffy Sweeney & Scott Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Attorneys for Plaintiff

by mailing a true and correct copy thereof to said party(ies) on the date stated below.

DATED this 15th day of August, 2005.

Charles S. Beal

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

EMISSIVE ENERGY CORPORATION, :: CA 04 482L

Plaintiff, ::

v. :

COAST CUTLERY CO.,

Defendant.

**DEFENDANT COAST CUTLERY'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendant Coast Cutlery Co. respectfully submits this Memorandum of Law in Support of Plaintiff's Motion to Compel Production of Documents ("Pl.'s Mot. to Compel Product of Docs.").

## INTRODUCTION

This lawsuit arises out of plaintiff's mistaken belief that Coast Cutlery, a family-owned business located in Portland, Oregon, intentionally breached a settlement agreement between the parties concerning an LED flashlight formerly sold by Coast Cutlery. By way of background, LED flashlights are flashlights using light emitting diodes to produce light at the molecular level, unlike ordinary flashlights which generate light through the use of filaments housed in light bulbs. Coast Cutlery has been selling LED flashlights since about 1998.

**The First Lawsuit and the Settlement Agreement.**

In late 2002, plaintiff Emissive Energy Corporation sued Coast Cutlery for false advertising, patent infringement and unfair competition in connection with Coast Cutlery‘s sale of an LED mini flashlight called the V2 Triplex. Emissive Energy alleged that the V2 Triplex was a knock off of its X5 mini flashlight product, when in reality the V2 Triplex had been designed independently by a Germany company called Zweibrüder Stahlwarenkontor. The case, Emissive Energy Corp. v. Zweibrüder et al., No. 02-497-L, was assigned to this Honorable Court.

In March 2003, Coast Cutlery stipulated to an Order enjoining it from using certain complained of phrases in connection with the V2 Triplex. In doing so, Coast Cutlery did not concede any wrongdoing. Instead, Coast Cutlery simply made a business decision to change its packaging and advertising rather than engage in further litigation on the topic. Coast Cutlery then changed its packaging and advertising materials to reflect its agreement.

In July 2003, Coast Cutlery entered into a Settlement Agreement whereby it agreed to phase out its sale of the old V2 Triplex. In doing so, Coast Cutlery did not concede any wrongdoing. Instead, it simply made a business decision that it was easier for Zweibrüder Stahlwarenkontor to redesign the V2 Triplex than to engage in further litigation on the topic. Coast Cutlery then phased out the old V2 Triplex and started selling a modified product – referred to herein as the Replacement Product and sold under the same model numbers -- in its stead. Emissive Energy does not challenge the Replacement Product in any respect.

The parties‘ settlement agreement, a copy of which is attached for the Court‘s convenience (without exhibits), did not call for the removal of the original V2 Triplex from the marketplace. It did, however, release all claims at issue in the first lawsuit, albeit limited to the United States. Settlement Agreement and Limited Release ¶ 7. The settlement agreement also

called for dismissal of the lawsuit with prejudice, id. ¶ 1 and C-1, which the Court did on July 16, 2003.

**The Current Lawsuit.**

In October 2004, Emissive Energy accused Coast Cutlery of continuing to sell the original V2 Triplex, which was not true. Emissive Energy apparently had found one of the original flashlights in a Rhode Island Target store, leading it to believe that Coast Cutlery was still selling the original product. The parties unfortunately were unable to resolve the dispute, and the instant lawsuit was filed in November 2004 alleging the same claims brought in the original lawsuit plus breach of the settlement agreement and trademark infringement.

Contrary to Emissive Energy's characterization of the current dispute, this is a garden variety breach of contract case arising out of an alleged breach of a settlement agreement. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F.Supp.2d 317, 324 (D.R.I. 1999) ("Settlement agreements are treated as contracts and enforced under the rules governing contracts generally."). Coast Cutlery has made and continues to make a good faith effort to comply with the settlement agreement. If it has fallen short of that goal, any shortcoming was de minimis at most and would not transform this case into something more than a contract enforcement action. Settlement agreements are binding contracts that should be given effect, particularly given that "Rhode Island courts favor the settlement of disputes outside of the litigation process." Id. Emissive Energy's Motion to Compel should be evaluated in light of the above background.[1]

---

[1] Emissive Energy takes the unsupported position that it seeks to demonstrate a breach of the settlement agreement so as to "pursue all remedies against Coast, including damages for all Coast's infringement, not just the post-Settlement Agreement infringement." Pl.'s Mot. to Compel Produc. of Docs. at 5 (emphasis in original).

## RESPONSE TO MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Request No. 5

Plaintiff's Request No. 5 seeks all communications between Coast Cutlery and any third party "concerning the Accused Flashlight, the Replacement Flashlight and/or the Accused Packaging." In response, Coast Cutlery raised several objections, including that the request sought documents that were neither relevant nor calculated to lead to the discovery of admissible evidence. Coast Cutlery lodged this objection because the request sought documents pertaining to claims that had been settled and released pursuant to the parties' July 2003 settlement agreement, which permitted Coast to import the Accused Flashlight through October 15, 2003 and sell the Accused Flashlight from stock through December 31, 2003.

Without waiving its objections, Coast Cutlery agreed to produce "copies of letters sent to customers regarding the phase out of the Accused Flashlight and Packaging and introduction of the Replacement Flashlight," as those documents are relevant to Emissive Energy's breach of settlement agreement claim. Coast Cutlery counsel subsequently was informed that Emissive Energy was surprised with the small number of letters produced and simply sought to ensure that Coast Cutlery had responded in full.

Coast Cutlery has produced all responsive documents. The previously produced generic customer letter dated February 14, 2005 was included in all product shipments – regardless of whether a shipment included the Replacement Product – and thus sent to a large number of customers. In addition, Coast Cutlery revised its catalogs to reflect the Replacement Product's photograph and ad copy prior to the parties finalizing the July 2003 settlement agreement and sent revised catalogs to customers in 2003, 2004 and 2005. Coast Cutlery has produced copies of its catalogs containing the Replacement Flashlight. Thus, Coast Cutlery believes it has responded fully to this Request.

Request Nos. 7 and 12

Plaintiff's Request Nos. 7 and 12 are related in that they both seek the production of documents "concerning" Emissive Energy's X5 flashlight. Request No. 7 seeks all "communications between Coast and any third party concerning the X5." Request No. 12 seeks all "documents concerning the X5 including, without limitation, all analyses, evaluations or market research of the X5 by Coast."

In responding to Request No. 12, Coast Cutlery explained that it has "no documents concerning analyses, evaluations or market research of the X5." Otherwise, Coast Cutlery objected to these requests on attorney-client privilege and work product grounds because literally every communication between Coast Cutlery and its attorneys in the first lawsuit was a communication "concerning the X5." In recent conversations with Emissive Energy counsel, Coast Cutlery counsel was informed that Emissive Energy does not seek a privilege log of all such communications generated in the first lawsuit. Other than those communications, all of which occurred after Emissive Energy filed the first lawsuit, there are no responsive documents.

Request No. 8

Plaintiff's Request No. 8 seeks all documents regarding the "manufacture, procurement, distribution and/or sale of the Accused Flashlight including, without limitations, inventory reports, sales reports, correspondence, internal memoranda and agreements." Coast Cutlery objected on several grounds, including that the request sought documents pertaining to claims that had been released pursuant to the settlement agreement.

Notwithstanding its objections, Coast Cutlery produced invoices documenting its procurement of all three versions of the V2 Triplex subject to the parties' settlement agreement – model numbers TT7546CP (V2 Triplex, Coast Brand, blue beam), TT7547CP (V2 Triplex, Coast Brand, white beam) and EB7547CP (V2 Triplex, Eddie Bauer Brand, white beam) –

dating back to the time of the first importation in 2002 through May 2005. The invoice dated August 25, 2003 indicated the change to the Replacement Product, after which there were no more imports of the Accused Flashlight. Coast Cutlery also produced documentation of its inventory and sales reports for the Accused Flashlight, which showed that all of the Accused Flashlight units had been sold prior to the agreed upon deadline of December 31, 2003.

Despite this production, Emissive Energy seeks to compel production "concerning the procurement of the Accused Flashlights to determine whether it continued to order the product in violation of the Agreement." Pl.'s Mot. to Compel Product. of Docs. at 5. Emissive Energy already has these documents. Emissive Energy also seeks to compel production "concerning sale and distribution of the Accused Flashlights" to determine whether Coast Cutlery complied with the December 31, 2003 deadline, but Emissive Energy already has these documents as well. In short, Coast Cutlery believes it has gone above and beyond its obligations in responding to Request No. 8.

Request No. 10

Request No. 10 seeks documents that show "on a monthly basis the costs incurred in connection with the manufacture, procurement, offer for sale, or sale of the Accused Flashlight . . . ." As with Request No. 8, Coast Cutlery objected to this request on several grounds, including because it sought documents pertaining to claims that had been settled and released pursuant to the parties' July 2003 settlement agreement. Pursuant to the parties' agreement, Coast Cutlery did not import the Accused Flashlight after October 15, 2003 or sell the Accused Flashlight after December 31, 2003, and Emissive Energy released its claims in connection with the Accused Flashlight.

Without waiving its objections, Coast Cutlery produced invoices documenting its procurement of the three versions of the V2 Triplex subject to the parties' settlement agreement

from the time of the first importation in 2002 through May 2005, well after Coast Cutlery replaced the Accused Flashlight with the Replacement Product. Coast Cutlery also provided sales information for the V2 Triplex, both in number of units and dollars, during the same period. Coast Cutlery further informed Emissive Energy that the duty rate on LED hand held lights is 12.50%, which is a matter of public record, and that its freight costs, import fees and brokerage fees total approximately an additional 8%. Freight forwarder invoices from the relevant time period have been provided to document these costs.

Coast Cutlery believes the requested information is not discoverable in this case and that it has exceeded its obligations in responding to this request.

Request No. 11

Request No. 11 seeks "documents concerning Coast's compliance with the terms of the Settlement Agreement." This request is redundant to other requests for production, including Request No. 5, to which Coast Cutlery has responded in full.

Similar to Request Nos. 7 and 12, discussed above, Coast Cutlery objected to this request on attorney-client privilege and work product grounds because nearly all communications between Coast Cutlery and its attorneys in the current lawsuit are communications "concerning Coast's compliance with the terms of the Settlement Agreement." Based on communications with Emissive Energy counsel, it is Coast Cutlery's understanding that Emissive Energy does not seek a privilege log of all such communications. Other than those communications, there are no responsive documents.

Request No. 13

Plaintiff's Request No. 13 seeks "documents concerning sourcing and/or importation of any part of the Replacement Flashlight." Coast Cutlery objected on numerous grounds because the Replacement Flashlight simply is not at issue in this case. Emissive Energy

does not challenge Coast Cutlery's sale of the Replacement Flashlight, and Coast Cutlery believes this request reveals Emissive Energy's real motive in this case, i.e. gaining proprietary business data about a competitor's products.

Notwithstanding its objections, as discussed above in connection with Request No. 8, Coast Cutlery produced invoices documenting its procurement of all three versions of the V2 Triplex subject to the parties' settlement agreement dating back to the time of the first importation in 2002 through May 2005. The invoice dated August 25, 2003 indicated the change to the Replacement Product, after which only the Replacement Product was imported. Thus, Coast Cutlery has exceeded its obligations in responding to Request No. 13.

**CONCLUSION**

For the foregoing reasons, Coast Cutlery respectfully requests that the Court deny Emissive Energy's Motion.

DATED this 15th day of August, 2005.

Respectfully submitted,

COAST CUTLERY CO.
By its attorneys

By: Michael E. Haglund /CSB

Michael E. Haglund
(pro hac vice counsel)
Julie A. Weis
(pro hac vice counsel)
Haglund, Kelley, Horngren,
Jones & Wilder LLP
101 SW Main, Suite 1800
Portland, OR 97204
Telephone: (503) 225-0777
Facsimile: (503) 225-1257
E-mail: weis@hk-law.com

By: ______________________

Charles S. Beal (#5559)
Cameron & Mittleman LLP
56 Exchange Terrace
Providence, R.I. 02903
Telephone: 401-331-5700
Facsimile: 401-331-5787
E-mail: cbeal@cm-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing **DEFENDANT COAST CUTLERY'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** on the following party(ies):

Craig M. Scott
Christine Bush
Duffy Sweeney & Scott Ltd.
One Turks Head Place, Suite 1200
Providence, RI 02903

Attorneys for Plaintiff

by mailing a true and correct copy thereof to said party(ies) on the date stated below.

DATED this 15th day of August, 2005.

By: ______________________
Charles S. Beal
Attorney for Defendant

COPY

# SETTLEMENT AGREEMENT AND LIMITED RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into between Emissive Energy Corporation ("Emissive"), a Delaware corporation with a principal place of business located at 135 Circuit Drive, North Kingstown, Rhode Island, Zweibrüder Stahlwarenkontor GmbH ("Zweibrüder"), a German corporation with a principal place of business located at Ohligser Schützenplatz 8, 42697 Solingen, Germany and Coast Cutlery Co. ("Coast"), an Oregon corporation with a principal place of business located at 2045 SE Ankeny, Portland, Oregon.

## RECITALS

A. On or about November 18, 2002, Emissive filed a lawsuit in the United States District Court for the District of Rhode Island seeking injunctive relief and damages against Zweibrüder and Coast in a case styled as *Emissive Energy Corporation v. Zweibruder Stahlwarankontor GmbH and Coast Cutlery Co.*, United Stated District Court for the District of Rhode Island, C.A. No. 02-497L (the "Litigation"). The Litigation concerned Emissive's claimed patent rights in certain mini flashlight products that are described and depicted in the United States Patent No. Des. 434,164 (the "Emissive Patent"). (A true copy of the Emissive Patent is attached as Exhibit A.) The Litigation also concerned Emissive's allegations of false advertising and unfair competition relating to Zweibrüder's and Coast's marketing, packaging and advertising of certain mini flashlights manufactured by Zweibrüder and distributed by Coast (the "Accused Packaging" and the "Accused Advertising"). Photographs of Zweibruder/Coast's mini flashlight product that is the subject of the Verified Complaint (the "Accused Works"), the Accused Packaging, and the Accused Advertising are attached as Exhibit B.

ATTACHMENT

B. On or about January 17, 2003, Coast filed an Answer to the Verified Complaint, denied the allegations therein and asserted certain legal and factual defenses.

C. On or about January 27, 2003, Zweibrüder filed an Answer to the Verified Complaint, denied the allegations therein and asserted certain legal and factual defenses.

D. On or about March 27, 2003, Coast stipulated to a permanent injunction concerning the Accused Packaging and the Accused Advertising.

E. Pursuant to this Agreement, the parties hereto desire to settle and resolve the controversy which gave rise to the Litigation.

**AGREEMENT**

NOW THEREFORE, for good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. **DISMISSAL OF LAWSUIT**

Immediately upon the execution of this Agreement, the parties agree to voluntarily dismiss the Litigation, with prejudice, in the form of the dismissal stipulation attached hereto as Exhibit C, and file the same with the Court.

2. **PHASE OUT USE OF THE ACCUSED WORKS**

On or before December 31, 2003, Zweibrüder and Coast shall permanently cease all manufacture, promotion, distribution and sale of the Accused Works as well as any other flashlight product that includes multiple LEDs each in an individual reflector cup or tube which are configured in the three, four, five, six or seven hole configuration depicted in the Emissive Patent attached as Exhibit A (together with the Accused Works, the "Lighting Products") in the United States and shall forever cease and desist from re-introducing said Lighting Products within the United States. Coast agrees to cease importing, and Zweibruder agrees to cease

exporting to any source in the United States, the Lighting Products by October 15, 2003, and Coast will sell the Lighting Products solely from stock through December 31, 2003.

3. ACKNOWLEDGEMENT OF THE EMISSIVE PATENT

(i) Zweibrüder acknowledges the validity of the Emissive Patent, and that nothing in this Agreement affects Emissive's ownership of or rights in or to said Patent.

(ii) Coast acknowledges the validity of the Emissive Patent, and that nothing in this Agreement affects Emissive's ownership of or rights in or to said Patent.

(iii) Zweibrüder and Coast represent and warrant that neither will challenge or contest, either directly or indirectly, the validity of the Emissive Patent.

4. THE ACCUSED PACKAGING AND ACCUSED ADVERTISING

(i) Zweibrüder and Coast will permanently cease using the Accused Advertising.

(ii) Zweibrüder and Coast will direct in writing all distributors, vendors and resellers, including Herrington Co., to cease immediately using any Accused Advertising.

(iii) Zweibrüder and Coast will permanently cease using the Accused Packaging.

(iv) Zweibrüder and Coast each represent that, notwithstanding Coast's current advertising claims and depictions, the Zweibrüder/Coast V12 mini flashlight does not contain LEDs in individual reflector cups or tubes.

(v) Zweibrüder and Coast and their distributors, vendors and resellers will not propagate any marketing materials that promote the Lighting Products as containing individual reflector cups or tubes which are configured in the three, four, five, six or seven hole configuration depicted in the Emissive Patent attached as Exhibit A.

5. **PAYMENT**

(i) Zweibrüder and/or Coast shall make a lump sum payment to Emissive totaling $42,500, which represents Emissive's attorneys fees arising from defendants' alleged false advertising to which Coast previously consented to a permanent injunction. This amount shall be paid to Emissive within ten (10) days of the execution of this Agreement.

6. **VERIFICATION**

On or before January 15, 2004, Zweibrüder and Coast each shall forward to Emissive a statement signed by an officer of each company representing that the phase out of the Accused Works has been completed.

7. **LIMITED MUTUAL RELEASES**

In consideration thereof, the conditions and payments set forth above, and other valuable consideration, and subject to Zweibrüder and Coast's compliance with the terms of this Agreement, Emissive, Zweibrüder and Coast hereby release and discharge each other and their past, present, and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, parents, subsidiaries, affiliates, partners, predecessors, successors-in-interest, and assigns, for and from any all claims, demands, allegations, actions, cause of actions, rights, damages, costs, expenses and compensation of whatever nature known and existing as of the date of this Agreement and limited to the Litigation. This release is limited to the United States.

8. **CONSTRUCTION**

If any provisions to this Agreement shall be deemed unlawfully void or unenforceable in whole or in part for any reason, such part hereof shall be deemed separate and shall in no way affect the validity or enforceability of the remainder of the Agreement. This Agreement is

entered into in the State of Rhode Island and shall be construed and interpreted in accordance with its laws.

9. **COMPLIANCE**

All actions relating to this Agreement, including the enforcement thereof, shall be brought exclusively in the Federal District Court for the District of Rhode Island. Zweibrüder and Coast specifically consent to the jurisdiction of the Federal District Court for the District of Rhode Island and waive any right either may have to contest such jurisdiction.

Notice of any enforcement proceedings against Zweibrüder or Coast shall be served upon Michael Haglund, Esq., Haglund, Kirtley Kelley Horngren Jones, LLP, One Main Place, 101 SW Main St., Suite 1800, Portland, OR 97204-3226 by registered mail, return receipt requested, and such service shall be deemed adequate notice to Zweibrüder and Coast.

10. **AGREEMENT BINDING ON SUCCESSORS**

This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and affiliates, including parents, subsidiaries, officers, directors, shareholders, agents, representatives, as well as their heirs, successors and assigns.

11. **FULL CORPORATE AUTHORITY**

Each of the parties hereto represents and warrants that: (i) it has the power and authority to execute and deliver this Agreement to perform its obligations hereunder; and (ii) it has had an adequate opportunity to consult with its attorneys prior to entering into the Agreement and has made such an investigation of the facts pertaining to this Agreement and related matters as it deems necessary.

12. NO OTHER ORAL OR WRITTEN AGREEMENT OR UNDERSTANDING

This Agreement and its Exhibits represent the entire agreement between the parties. The Agreement may not be modified or waived except in writing and signed by an officer or other authorized representative of each party.

EMISSIVE ENERGY CORPORATION

By: [signature]

Its: CEO

Subscribed to and sworn before me this 14th day of July, 2003.

[signature]

Notary Public

My Commission Expires: 5/05

COAST CUTLERY CO.

By: [signature]

Its: PRESIDENT / COO

Subscribed to and sworn before me this 10TH day of JULY, 2003.

[signature] Nancy D. Morgan

Notary Public

My Commission Expires: 3-18-2007

OFFICIAL SEAL
NANCY D MORGAN
NOTARY PUBLIC-OREGON
COMMISSION NO. 364990
MY COMMISSION EXPIRES MAR. 18, 2007

ZWEIBRÜDER STAHLWARENKONTOR GMBH

By: ____________________

Its: ____________________

Subscribed to and sworn before me this _____ day of ____________, 2003.

____________________

Notary Public

My Commission Expires: __________

12. NO OTHER ORAL OR WRITTEN AGREEMENT OR UNDERSTANDING

This Agreement and its Exhibits represent the entire agreement between the parties. The Agreement may not be modified or waived except in writing and signed by an officer or other authorized representative of each party.

EMISSIVE ENERGY CORPORATION

By: ____________________

Its: ____________________

Subscribed to and sworn before me this _____ day of ___________, 2003.

____________________
Notary Public
My Commission Expires: ________

COAST CUTLERY CO.

By: [signature]

Its: PRESIDENT / COO

Subscribed to and sworn before me this 10TH day of JULY, 2003.

[signature] Nancy D Morgan
Notary Public
My Commission Expires: 3-18-2007

OFFICIAL SEAL
NANCY D MORGAN
NOTARY PUBLIC-OREGON
COMMISSION NO. 364990
MY COMMISSION EXPIRES MAR. 18, 2007

ZWEIBRÜDER STAHLWARENKONTOR GMBH

By: ____________________
Its: ____________________

Subscribed to and sworn before me this _____ day of ___________, 2003.

____________________
Notary Public
My Commission Expires: ________

H:\Clients\Emissive Energy\Coast Cutlery\Pleadings\Settlement Agreement.doc

## 12. NO OTHER ORAL OR WRITTEN AGREEMENT OR UNDERSTANDING

This Agreement and its Exhibits represent the entire agreement between the parties. The Agreement may not be modified or waived except in writing and signed by an officer or other authorized representative of each party. .

EMISSIVE ENERGY CORPORATION

By: ______________________

Its: ______________________

Subscribed to and sworn before me this ____ day of __________, 2003.

______________________
Notary Public
My Commission Expires: ________

COAST CUTLERY CO.

By: ______________________

Its: ______________________

Subscribed to and sworn before me this ____ day of __________, 2003.

______________________
Notary Public
My Commission Expires: ________

ZWEIBRÜDER STAHLWARENKONTOR GMBH

By: ~~Rainr~~ Rainer Opolka
Its: General Manager

Subscribed to and sworn before me this 10 day of July, 2003.

______________________
Notary Public
My Commission Expires: ________

DR. JÖRG REEMANN * NOTAR IN SOLINGEN *

H:\Clients\Emissive Energy\Coast Cutlery\Pleadings\Settlement Agreement.doc